UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

K'MUEL KING,
   Plaintiff,

vs.                              No. 04-1328

STEPHEN MOTE, et.al.,
   Defendants

### ORDER

     This cause is before the court for a case management hearing and consideration of the plaintiff's renewed motion for appointment of counsel [d/e 58] and the defendants motions for summary judgment. [d/e 50, 54]. The plaintiff appeared pro se. Defendants Stephen Mote, Donald Snyder and Cletus Shaw were represented by Assistant Attorney General Jason Young. Dr. Arthur Funk was represented by Attorney David Walter.

     The plaintiff has two surviving claims pursuant to 42 U.S.C. §1983:

     a) Defendant Funk was deliberately indifferent to the plaintiff's serious medical needs when he refused to treat the plaintiff for an asthma attack and refused to treat the plaintiff after he was attacked by another inmate in October of 2002.

     b) Defendants Shaw, Mote and Snyder denied the plaintiff's due process rights during a disciplinary hearing for a charge of fighting on October 1, 2002. The claims are against the defendants in their individual capacities only.

### I. BACKGROUND

     On September 24, 2004, the plaintiff filed his complaint pursuant to 42 U.S.C. §1983 against seven defendants. On January 14, 2007, the plaintiff participated in a merit review hearing and four claims were identified against the defendants. On May 24, 2005, the defendants filed a motion to dismiss the complaint  The plaintiff responded by filing a motion to voluntarily dismiss his lawsuit. [d/e 25]. The plaintiff stated that he was not able to continue his case without counsel and stated, for the first time, that he was under psychiatric care. The plaintiff had filed two prior motions for appointment of counsel, but had not mentioned that he had any mental health problems. [d/e 2, 7]

     The court set the case for hearing and asked for a physician to provide information concerning the plaintiff's status. On July 20, 2005, the court heard testimony from Dr. Christine Fletcher. The doctor confirmed that the plaintiff was under psychiatric care. The plaintiff also stated that he had attended school through the 8th grade and had passed a high school equivalency examination.

On its own motion, the court appointed counsel for the plaintiff. The court made extensive efforts to find counsel to represent the plaintiff without success. The court circularized the bar association presidents of the eleven counties surrounding the Urbana court house and asked them to request volunteers in their news letters to accept pro bono appointment in prisoner pro se litigation in this court. There was not a single volunteer.

The court noted that there was some uncertainty as to whether the plaintiff had exhausted his administrative remedies for his claims. Since the court could not even consider the plaintiff's allegations if he had not first met this requirement, the court instructed the parties to provide information and any relevant documentation concerning the plaintiff's efforts to exhaust his administrative remedies. *See* 42 U.S.C. §1997e(a).

The plaintiff responded with briefing and extensive documentation. The court reviewed all documentation provided by all the parties and found that the plaintiff had not in fact exhausted his administrative remedies as required for two of his claims. Those claims and defendants were dismissed. The plaintiff filed a motion to reconsider the court's decision. [d/e 45] The motion was denied, but the plaintiff made cogent arguments in both his motion and in a subsequent hearing.

On August 23, 2007, the court rescinded its appointment of counsel stating that it believed the decision was premature. The court's initial concern was the that the plaintiff was under psychiatric care. However, the plaintiff was receiving care and treatment throughout the course of this litigation. The plaintiff has been coherent and able to make valid points during any video hearings. All documents filed in this case have been in the same distinctive handwriting and have been more clear and coherent that many others drafted by pro se prisoners. The court stated that before it could continue to look for counsel for the plaintiff, it must be sure that the plaintiff has in fact alleged violations of his constitutional rights. If not, the presence of counsel would not make a difference in the outcome of the lawsuits. *See Farmer v Haas,* 990 F.2d 319, 322 (7th Cir. 1993); *King v. Frank,* 328 F. Supp.2d 940, 951 (W.D. Wid July 27, 2004).

Specifically, the court noted that in reviewing documentation on the exhaustion requirement, it did not appear the plaintiff had stated a violation of his due process rights. In addition, documents submitted by the plaintiff suggested that the plaintiff had received medical treatment after the altercation with another inmate.

The court ordered the defendants to provide the court will well-supported briefs on the plaintiff's two surviving claims by September 14, 2007. The plaintiff was also ordered to provide a response on or before October 12, 2007. The court then set the case for video hearing to discuss the status of the case. *See* August 23, 2007 Court Order.

The defendants filed dispositive motions. The plaintiff ignored the deadline. Instead, the plaintiff filed another motion for appointment of counsel stating that he did not know how to respond to the motions. The plaintiff has previously provided appropriate responses to all matters before this court. In addition, the plaintiff filed a letter stating that he was hearing voices and believed the defendants and others were out to get him. The plaintiff made no such claim prior to

the court rescinding its appointment of counsel. In fact, in all previous contact both orally and in writing, the plaintiff was able to adequately express himself and his viewpoints. The plaintiff chose not to follow the court's order to provide a written response to the defendants' dispositive motions. He did not ask for extra time to file a response.

This case proceeded to hearing on the motions for summary judgment and the plaintiff participated by video conferencing. Once again, the plaintiff was coherent and able to provide appropriate answers to all questions. Therefore, the plaintiff's renewed motion for appointment of counsel is denied. [d/e 58].

## II. FACTS

The plaintiff did not provide a response as ordered to the motions for summary judgement. The following facts are taken from the defendants' motions and the plaintiff's statements during the October 25, 2006 status hearing.

On October 1, 2002, the plaintiff received a disciplinary ticket for fighting as a result of an incident with his cell mate. On October 9, 2002, an Adjustment Committee hearing was held. The plaintiff claimed he was attacked and did not fight back. The Adjustment Committee continued the hearing for further investigation based on these claims. The Internal Affairs Division investigated and wrote a second disciplinary report with the results of that investigation. The report indicated that there were signs of mutual combat based on injuries to the other inmate.

On October 23, 2002, the Adjustment Committee hearing found the plaintiff guilty of fighting. The plaintiff did not lose good time credits, but did lose one month of privileges, was placed in segregation for one month and received c grade status for one month.

Dr. Funk is the Medical Director at Pontiac Correctional Center. He does see inmates on occasion, but most of the day-to-day care is provided by staff physicians.

Dr. Funk says the medical records indicate that the plaintiff says he was injured by another inmate on October 1, 2002. He saw a nurse first at 7:09 p.m. He reported pain to the back of his head, scratches on his shoulder, pain in his knee and that said his asthma was acting up. The nurse noted he was alert, oriented, had a steady gait and had no obvious injuries. She recommended that he be seen by a doctor.

At 7:20 p.m, the plaintiff was seen and treated by a staff doctor, not Dr. Funk. The plaintiff was admitted to the infirmary at 8:00 p.m. Dr. Funk remembers no contact with the plaintiff on this day and there are no medical records or notes indicating he had any direct contact or communication with the plaintiff on this date. During the status conference, the plaintiff stated that was probably true.

Several days later, on October 10, 2002, Dr. Funk received a letter from the plaintiff

requesting follow-up care.  Dr. Funk says he scheduled the plaintiff for the next sick call.  The plaintiff was seen by nursing staff the next day and his sutures were removed from the back of his head.  He was also seen in the asthma clinic on this same day, but had no face-to-face encounter with Dr. Funk concerning the injuries he received as a result of the altercation with another inmate.

During the status hearing, the plaintiff says the only face-to-face encounter he had with Dr. Funk concerned his asthma.   The plaintiff stated that he is suing Dr. Funk because he had an asthma attack and saw Dr. Funk in the health care unit.  The plaintiff says Dr. Funk performed and examination and accused the plaintiff of causing his own asthma problem. The plaintiff said he was having problems breathing and the Dr. Funk refused to treat him.  Instead, the plaintiff says Dr. Funk mocked him and accused him of being a malingerer.

During the hearing, the defendants confirmed that the plaintiff had a face-to-face meeting with Dr. Funk on February 12, 2003.  The medical records indicate that the plaintiff reported that his asthma was worse and he needed to be assigned to the lower gallery and given two fans.  The doctor notes no acute distress.  The medical records confirm that an examination was done.  The notes also indicate the plaintiff was able to speak in full sentences without pausing (Def. Mot, Funk Aff, p. 6)

> Based upon my experience and my medical judgement, it was my determination
> that Mr. King's complaint that he suffered from worsening asthma condition was
> inaccurate.  Mr. King was self-inducing his respiratory obstruction.  In addition,
> it was apparent that Mr. King was not providing the optimal amount of effort with
> respect to his lung capacities and breathing capacities. *Id.* at 7.

Dr. Funk says he believed the plaintiff needed "additional patient education which he was provided." *Id.*  The plaintiff's request for a low gallery permit and two fans was denied.

Dr. Funk says there are no medical records that indicate the plaintiff suffered from any medical conditions associated with asthma directly following the February 12, 2003 examination.  The plaintiff was seen in the asthma clinic on June 5, 2003 and October 25, 2003 where he was seen by other physicians and provided additional information and medication for his condition.  Dr. Funk states there is no indication that the plaintiff suffered any injuries as a result of the care he received from Dr. Funk or any other medical personnel at Pontiac Correctional Center. *Id.* at 9.

### III. LEGAL STANDARD

The entry of summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc,* 477 U.S. 242, 248 (1986).  A dispute is genuine only if a reasonable jury could find for the nonmoving party.  *Id.*

A party moving for summary judgment initially has the burden of showing the absence of any genuine issue of material fact in evidence of record. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153 (1970); *Schroeder v. Barth, Inc.,* 969 F.2d 421, 423 (7th Cir. 1992). A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). "Summary judgement is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgement must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994).

## IV. ANALYSIS

The defendants correctly point out that the plaintiff has failed to demonstrate a violation of his due process rights. "To establish a procedural due process violation, a prisoner must demonstrate that the state deprived him of a liberty or property interest created either by state law or the Due Process Clause itself.*" DeWalt v. Young*, 224 F.3d 607, 613 (7th Cir. 2000)(citations omitted). None of the discipline imposed on the plaintiff deprived him of a protected liberty or property interest. *See Whitford v. Boglino*, 63 F.3d 527, 533 n. 7 (7th Cir. 1995) (Demotion in grade status does not implicate federal due process rights.); *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(Loss of commissary privilege does not affect a liberty or property interest); *Tullis v. DeTella* 1999 WL 90650 at 4 (N.D. Ill 1999) (loss of audio-visual privileges is not an atypical and signification deprivation). Also, disciplinary segregation itself does not necessarily implicate the due process clause, if "such segregation does not impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472 (1995); *Wagner v. Hanks*, 128 F.3d 1173, 1176 (7th Cir. 1997). The court will dismiss the plaintiff's due process claim.

Dr. Funk also argues that the plaintiff cannot demonstrate that he violated the plaintiff's Eighth Amendment rights. The plaintiff must pass both an objective and a subjective test in order to establish that the defendants violated the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). The first prong of the test requires the plaintiff to demonstrate that the alleged deprivation was sufficiently serious. *Id*. The second prong of the Eighth Amendment test requires the plaintiff to show that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

"[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42) Inadequate medical treatment due to negligence or even gross negligence does not support an Eighth Amendment violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987). In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997).

The plaintiff admits he did not see Dr. Funk for his medical problems regarding the October 1, 2002 incident. The medical records demonstrate the plaintiff did receive care on the day of the fight and did receive follow up care. Dr. Funk was not deliberately indifferent or even

directly involved in the plaintiff's care other than approving follow up care.

The plaintiff did see Dr. Funk on February 12, 2003. The plaintiff does not dispute that Dr. Funk examined the plaintiff on this occasion, but he does not believe the doctor treated him appropriately. This is not a violation of the plaintiff's constitutional rights. Inadequate medical treatment due to negligence or differences in opinion between an inmate and medical staff do not rise to the level of a constitutional violation. *Zentmyer v. Kendall Co.*, 2000 WL 760690, at 4 (7th Cir. 2000); *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir. 1991); *Snipes v. Detella*, 95 F.3d 586, 591 (1996). The motion for summary judgement on this claim is also granted.

The court would like to accommodate all pro se prisoners requests for appointment of counsel. It would be beneficial to both the prisoner and the court. However, there is no constitutional or statutory right to be represented by an attorney in lawsuits pursuant to §1983, and there are few attorneys willing to accept these cases. The court was premature in appointing counsel in this case based solely on the fact that the plaintiff was receiving psychiatric care. The plaintiff's conduct in hearings, responses to court orders and various pleadings demonstrated that he was competent to represent himself. In addition, the court should first determine that the plaintiff had a meritorious claim.

> Lawyers who accept appointments to represent pro se plaintiffs in civil cases are not guaranteed any compensation. Thus, before this court takes the significant step of seeking out a lawyer willing to take the case, the court has an obligation to insure that the issues raised in a particular case are both substantial and meritorious. Further, the number of lawyers able to take court appointments is very limited. Thus, it is simply impossible to accommodate all of the requests of pro se plaintiffs, mostly prisoners, who request a lawyer. *King v. Frank,* 328 F. Supp.2d 940, 951 (W.D.Wis July 27, 2004).

The court cannot even consider the merit of the plaintiff's claims if he has not first exhausted his administrative remedies as required. Two of the plaintiff's claims were dismissed for failure to meet this initial hurdle. *See* August 7, 2007 Court Order. The plaintiff also failed to state a due process claim because he again could not pass the first hurdle of demonstrating that he was deprived of a liberty or property interest. Finally, although the plaintiff may not have agreed with the doctor's medical opinion or treatment, this is not a violation of his constitutional rights. The assistance of counsel would not have made a difference in the ultimate outcome of this lawsuit. *Farmer,* 990 F.2d at 322.

**IT IS THEREFORE ORDERED that:**

**1) The plaintiff's renewed motion for appointment of counsel is denied. [d/e 58]**

**2) The defendants' motions for summary judgment are granted. [d/e 50, 54 ]. The Clerk of the court is directed to enter judgment in favor of the defendants and against**

the plaintiff pursuant to Fed. R. Civ. P. 56.  The case is terminated.  The parties are to bear their own costs.

3) **If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal** *in forma pauperis* **should set forth the issues the plaintiff plans to present on appeal.**  *See* **Fed. R. App. P. 24(a)(1)©.  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g)**

4) **The agency having custody of the plaintiff is directed to remit the docketing fee of $150.00 from the plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $150.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $150.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $150.00.**

5) **The plaintiff is responsible for ensuring the $150.00 filing fee is paid to the clerk of the court even though his case has been dismissed.  Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.  The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.**

6)  **The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Entered this 5th  day of November,  2007.

s\Harold A. Baker

_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE